Joseph Liff, J.
The defendant New York State Teachers Retirement System moves for summary judgment pursuant to rule 113 of the Rules of Civil Practice (CPLR 3212). In this action for a declaratory judgment the plaintiffs “ on behalf of themselves and all other school teachers in the State of New York similarly situated,” challenge the defendant’s use of two sets of mortality tables in computing the retirement allowance.
The retirement allowance of a teacher who qualifies is made up of two portions: that is, an annuity and a pension (Education *975 Law, § 510). The particular objection of the plaintiffs is that should the member, upon retirement, select option “ 1 ” of the optional allowances made available by section 513 of the Education Law, a mortality table would be used different from that which would be employed in computing his annuity payments. This, they claim “ is wholly illegal, confiscatory, arbitrary and capricious, and violative of the contractual relationship imposed upon plaintiffs by law whose benefits thereunder may constitutionally not be diminished or impaired,” (complaint, par. “ thirteenth ”). They ask for judgment declaring (1) that the use of the two annuity tables is arbitrary, capricious and “ contractually illegal ”; and (2) that it is confiscatory in that it deprives the teacher or his estate of sums of money which constitute deferred salary or compensation for said teacher’s services; and (3) “ That the defendant be directed to make restitution to the estates of those teachers who have, since April 26, 1929, retired under said Option 1, and who died prior to the exhaustion of the properly computed total reserve; ” (complaint, prayer for relief). It is clear that they complain of the use of two different mortality tables. It is not equally clear which of the two mortality tables they would have apply to all benefits, although we are left with the inference that they would prefer that the same mortality table which is used for the computation of the annuity feature of the retirement allowance be used in computing all optional allowances.
From an examination of the pleadings and all papers submitted on this motion, it appears that there are no factual issues and that only a question of law is raised. The plaintiffs allege that members of the defendant retirement system make contributions to a retirement fund administered by the system for which, upon retirement, they will receive an annuity. They also allege that in addition to the moneys contributed by them, their employers, the school districts, contribute sums of money to a fund administered by the defendant. It is this fund from which the plaintiffs will receive a pension upon their retirement. The plaintiffs allege and the defendant denies that the contributions made by the school districts constitute deferred salary or compensation for services rendered, or to be rendered. The plaintiffs allege and the defendant admits that the plaintiffs can only become eligible for their benefits upon retirement after completion of years of service, attainment of a certain age, or disability, all as prescribed by law, and that this retirement benefit would be made up of annuity and pension features as above described.
The parties agree that option “ 1 ”, as well as other options, is made available pursuant to section 513 (supra). The defend *976 ant admits the plaintiffs’ allegation that different mortality-tables are nsed in computing the annuity feature and the pension feature whenever a retiring teacher elects option “ 1 The defendant denies the plaintiffs’ allegation that the use of two different tables in this manner is illegal, confiscatory, etc., and that it violates the contractual relationship between the parties.
Finally, the defendant sets up as an affirmative defense that it is required under law to maintain the retirement system on an actuarially sound basis which dictates the adoption of tables in accordance with the benefits selected by a member of the system. The defendant requests a judgment declaring that the use of such tables is proper and that the sums of money in the pension fund are not the property of the individual members of the system, but rather that they are held for the benefit of all members of the system.
Nowhere have the plaintiffs alleged the date when they became members of the system. It must, therefore, be assumed that the mortality tables, so far as they affect the plaintiffs, were in effect on July 1,1940, or on the date when the plaintiffs, or either of them, became a member of the system, whichever is later.
The plaintiffs rely very heavily on the decision of the Court of Appeals in Birnbaum v. New York State Teachers Retirement System (5 N Y 2d 1). In that case, it was decided that once section 7 of article V of the New York State Constitution had been adopted, changes in mortality tables for the same individual would not be permitted; that is, the mortality tables in effect on the date of the member’s entry into the retirement system, or July 1,1940, whichever was later, could not be altered thereafter because this would affect the contractual relationship which arose when the employee became a member of the system.
In that case the retirement system raised the issue that the interpretation urged by the plaintiffs would bankrupt the system. The Court of Appeals (p. 11) stated that that was not the problem of the court; that there had been a sufficient lapse of time between the date when the proposed amendment was first advanced and finally became effective to have permitted the adoption of mortality tables which would insure against such an eventuality. Nowhere did the court in that decision indicate that more than one mortality table for the same individual could not be adopted when he first entered into the contractual relationship which the court recognized to have been created by the constitutional amendment. Moreover, it is desirable that there should be a choice in the options that are offered to a contributing member. There is no obligation on the member to accept one rather than another of the choices offered to him. However, if *977 he desires to make a selection, he takes them as they are offered. These were the elements of the contractual relationship into which he enters.
Thus, in Birnbaum v. New York State Teachers Retirement System (supra) the Court of Appeals held that the contractual relationship which had not theretofore existed (Roddy v. Valentine, 268 N. Y. 228 [1935]) had been established by section 7 of article V of the Constitution of this State. The court struck down the attempt by the retirement system to alter mortality tables in the light of later actuarial practice with respect to a member. They held that this would diminish the benefits and impair the contractual relationship. Therefore, an objection can be raised by a member should attempt be made to adopt new mortality tables subsequent to that date when he became a member. Here no such claim is made by the plaintiffs. The fact is that while an employee has a right at any time to the contributions which he makes to the annuity feature of the retirement allowance, even upon withdrawal prior to retirement, and in addition acquires a right to a pension, this latter right is subject to his having completed the years of service, attained the age, or suffered the disability which entitle him to the pension (Education Law, art. 11, § 510 et seq.).
As the court said in Birnbaum v. New York State Teachers Retirement System (supra, p. 9): “At the time the employee joins the system he is able to look forward to a pension or retirement allowance when his service is over.” Thus, the relationship which arises between the plaintiffs when they enter the system and the defendant has, as the court stated at page 9, “ the attributes of a contractual relationship ”, but certainly the member was not entitled to the pension feature until he had completed his years of service, attained a certain age, or retired for disability. It might be emphasized that in the Birnbaum case the “pension” feature of the “retirement allowance” was not involved. The result of the decision was to protect the employee from “ the vicissitudes of actuarial experience ” (p. 10) and the possible result that the member’s annuity benefits would be reduced by the adoption of new mortality tables. Within the limitations thus laid down by the Court of Appeals, the defendant was obliged tc use sound actuarial practices in accordance with the provisions of section 508 of the Education Law (Birnbaum v. New York State Teachers Retirement System, supra, p. 11). In this connection the court at that page said: “ It seems to us that there is no necessity for so holding since it is reasonable to construe the Education Law as authorizing (1) a periodic review by the State Teachers Retirement *978 System of the mortality tables being used to compute annuities, (2) the adoption of new mortality tables, and (3) the use of the new mortality tables in the computation of the annuities of only such persons as enter the system thereafter.”
Throughout article 11 of the Education Law, which established the State Teachers Retirement System, distinctions are drawn between the annuity and pension features of the retirement allowance. Employers are obligated to pay into the pension accumulation fund a “ normal contribution ” and a “ deficiency contribution ”. This fund is maintained to provide the pensions payable out of the fund during the year then current and should the payments by employers prove to be insufficient, then the employers are required to make an additional contribution so as to meet the necessities of the fund. Pensions are to be paid from the pension accumulation fund and it is only upon the retirement of the individual that a transfer is made from the pension accumulation fund to the annuity reserve fund of such amounts as may be necessary (§ 517 et scg.). Thus it becomes apparent that the contributions made by employers to the pension funds is not deferred compensation because the payment is made to maintain a pension fund which will be necessary to pay pensions and the employee only becomes entitled to a pension in accordance with the terms prescribed by statute. Subdivision 2 (par. [d]) of section 517 of the Education Law provides in part as follows: “ The aggregate of all such payments by employers shall be sufficient, when combined with the amounts in the pension accumulation fund, to provide the pensions payable out of the fund during the year then current, and if not, the additional amount so required shall be collected by means of an increased contribution which shall continue in force for the period of one year, anything to the contrary notwithstanding.” It is apparent from this provision that the contributions made by the employers vary pursuant to the demands which it is anticipated will be made necessary upon the fund in a current or ensuing year, and these contributions are not determined by the salary paid to an individual employee, but rather by the necessities of the fund itself.
The “vested right,” therefore, was a contractual right to receive a pension pursuant to the provisions of section 510 which were in effect at the time such rights became vested. Any “deferred compensation” which may be claimed with respect to the pension reserve fund, can only be construed to be the right to receive the benefit of a pension to be paid on retirement but not to the fund itself. In no way are such contributions by the employer deemed to be compensation. The amount of such *979 contribution made by the employer is not added to the employee’s earnings for the purpose of determining income or payroll taxes, nor are there any other indices of ownership. The plaintiffs recognize the distinction when they describe the member’s own funds as being “ fully vested in him.” (Affidavit of Ellis Ostrove, p. 5.)
It would, therefore, appear that the choice of the annuity table made for option “ 1 ” was based upon the experience of the retirement system and upon the advice of the consulting actuary for the system and that the vested interest to which the plaintiffs are entitled in option “1” is not changed by virtue of the use of mortality tables for that option is different from those used for the remaining options. These were in existence at the time the contractual obligation was entered into between the parties, and the use of those tables was properly a part of such contractual obligation. The defendant’s motion for summary judgment is granted.